## MUNICIPAL WATERWORKS CO. v. CITY OF FT. SMITH.

(District Court, W. D. Arkansas, Ft. Smith Division. May 30, 1914.)

1. WATERS AND WATER COURSES (§ 203*)—WATER COMPANIES—CONTRACT WITH CITY—CONSTRUCTION.

By ordinance defendant city granted a franchise to and entered into a contract with the predecessor of plaintiff water company. By the contract the city was given the right to purchase the plant of the company at stated periods, but by a subsequent agreement such right was postponed for 20 years from October 1, 1887, which was beyond the term of the franchise. By the original and subsequent contracts, water for certain purposes was to be furnished for the use of the city free, and such agreement was to continue in force "during the existence of the franchise and contract." After the expiration of the term of the franchise, both the franchise and contract were treated by both parties as continuing in force; bills for hydrant rentals under the contract being presented and paid as before. On October 1, 1907, the city, having elected to purchase, brought suit to have the value of the plant determined in accordance with a provision of the contract. Shortly afterward plaintiff notified the city that it would thereafter charge for the water previously furnished under the contract free, but to this the city refused to assent. Held, that the contract period, during which the prices fixed therein were to continue in force, included the time necessary for the city to complete the purchase, and that plaintiff could not recover for water furnished the city during the pendency of the suit, which under the contract was to be free.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289, 290–299; Dec. Dig. § 203.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. ASSUMPSIT, ACTION OF (§ 7*)—GROUNDS OF ACTION—IMPLIED PROMISE.

One of the purposes for which plaintiff contracted to furnish water free was the flushing of sewers. After its notice that it would charge for water so furnished, and counter notice by the city that it would not pay for the same, plaintiff continued to furnish it. *Held*, that if not furnished under the contract, plaintiff could not recover therefor on an implied assumpsit, since no promise to pay can be implied, contrary to the express declaration of the party sought to be charged.

[Ed. Note.—For other cases, see Assumpsit, Action of, Cent. Dig. §§ 37–41; Dec. Dig. § 7.*]

At Law. Action by Municipal Waterworks Company against the City of Ft. Smith. Trial to court. Judgment for defendant.

Read & McDonough, of Ft. Smith, Ark., for plaintiff.
Kimpel & Daily, of Ft. Smith, Ark., for defendant.

YOUMANS, District Judge. This is a suit by plaintiff against defendant for the value of water alleged to have been furnished by the former to the latter from January 1, 1908, to April 5, 1911. It has been submitted to the court sitting as a jury. The subject-matter grows out of a suit begun prior to January 1, 1908, and terminated in April, 1911, which the city of Ft. Smith instituted against the plaintiff to enforce an option to purchase the plant, reserved in the franchise granted by ordinance to plaintiff's predecessor, March 31, 1884, being Ordinance No. 35. That ordinance, with amendments thereto, appears in Read & McDonough's Digest of the Ordinances of the City of Ft. Smith as sections 1069 to 1103, both inclusive. Section 1085 is as follows:

"Sec. 1085. Right to Purchase.—The city shall have the right to purchase said waterworks and appurtenances at the expiration of ten years from January 1, 1885, and at the expiration of every five years thereafter, at their fair and equitable value of the works, lands, buildings, machinery and equipments; such value, in case the parties can not agree, to be determined by arbitration, as provided by the state, or, if that method is not satisfactory, by the circuit court of Sebastian county for the Fort Smith district, as other questions of fact—any delays in such proceedings not to forfeit the right of the city to make such purchase, and any incumbrance upon said .works and property shall be subject to the right of the city to purchase the same as herein provided."

On February 22, 1887, the city council of the city of Ft. Smith passed a resolution which appears in the Digest as section 1092, as follows:

"Sec. 1092. Extension of Contract and Right of Purchase—Whereas, the Fort Smith Waterworks purpose, as set forth by their letter addressed to the mayor and city council of February 2, 1887, to increase the efficiency of their works by putting up, at great expense, new machinery, with the capacity to insure a sufficient supply of water for all purposes, as required by the terms of Ordinance No. 35 (a), not only for the wants of the present inhabitants, but sufficient to keep pace with the wants of our rapidly increasing population. Therefore, be it resolved, that in consideration of said additions and improvements the city hereby waives the right of purchasing said waterworks, as provided for in section 9 of said Ordinance 35, for the full term of twenty years, from and after the completion of said addition and improvements, as indicated in the letter above referred to; provided, that the said improvements shall be commenced at once and shall be completed on or before the first day of October, A. D. 1887, or sooner if practicable, unless prevented by high water. Resolution February 22, 1887."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Section 7 of the original ordinance appears in the Digest as section 1081, and is as follows:

"Sec. 1081. Hydrants, Number and Kind.—There shall be located at such places (on the lines of mains as laid by said grantees), as the city council may approve, not less than fifty double-tipped, brass-mounted, anti-freezing fire hydrants, with two and one-half inch nozzles for fire hose; said hydrants to be furnished, erected and kept in repair by said grantees, and for the use of each and every of which fire hydrants, from and after the completion of said waterworks and tests as herein provided, during the continuance of this franchise, said city hereby agrees to pay the said grantees, or their assigns, the sum of sixty dollars per annum. The said grantees shall furnish and erect additional hydrants when so ordered by the city council, for the use of each and every additional hydrant, from and after the time when they are ready to supply water, notice thereof to be given in writing to the city recorder, the city hereby agrees, during the continuance of this franchise, to pay the sum of fifty dollars per annum; all hydrant rental to be paid semiannually on the 15th day of January and July of each year."

Part of section 9 of the original ordinance appears in the Digest as section 1087, and is as follows:

"Sec. 1087. Right to Maintain and Operate the Same.—At the expiration of this franchise, if the city is not the owner of said waterworks, the grantees shall continue to have the right to maintain and operate the same, the city having the right to continue the use of the fire hydrants upon such terms as may be then agreed upon, or, if the parties do not agree, then at the minimum rates for water actually used."

In section 1088, being part of the original ordinance fixing annual water rates, appears the following: "City offices and prisons included in hydrant rent."

In January, 1891, a supplementary contract was entered into by plaintiff and defendant, which appears as section 1093 of the Digest, and is as follows:

"Sec. 1093. Supplemental Contract—Standpipe—Hydrants and Other Conditions.—The board of public affairs of the city of Forth Smith be and is hereby authorized to enter into a contract with the Fort Smith Water Company to settle existing difficulties between said city and company, in the following terms: Contract between the city of Forth Smith and the Fort Smith Water Company. It is hereby agreed by and between the city of Fort Smith, Arkansas, party of the first part, and the Fort Smith Water Company, party of the second part, that the party of the second part shall put in its plant for said city, a new set of pumps with a capacity of not less than two and a half million gallons per day; shall erect a stand pipe or water tower, at or near its present reservoir; shall put a filter in said plant; shall put in a twelve-inch supply main from the reservoir along Lexington avenue to Little Rock avenue; thence along Little Rock avenue to Thirteenth street; thence along Thirteenth street to North C street; thence along North C street to North Fourth street; a ten-inch main from South D. street along Wheeler avenue to Carnall avenue; thence across Carnall avenue to and along Garland avenue to South Sixth street; thence along South Sixth street to Parker avenue; thence along Parker avenue to South Fourth street; an eight-inch main along South Fourth street from Parker avenue to North C street; along South B street from Lexington avenue to Little Rock avenue; thence along Little Rock avenue to Eighteenth street, and thence along Eighteenth street to North F street; a six-inch main along North E street from Lexington avenue to South Eighteenth street: thence along South Eighteenth street to Little Rock avenue; on North Thirteenth street from North C street to North J street; thence on North J street to North Twelfth street; thence on North

Twelfth street to North I street; on North Tenth street from North C street to North L street, and from South Fourth on Rogers avenue to Towson avenue; a sixteen-inch main from the present terminus of the force main near the pumphouse to the reservoir or stand pipe, independent of the present distribution pipes running to the reservoir and to the city. The city shall, at the time of laying the above mains, designate the places where city hydrants will be placed when they shall be ordered, so that the water company can put in specials to which said hydrants can afterwards be attached. Said work is to be begun immediately and be completed by September 1, next, any delays by injunction or order of any court, unavoidable accidents or delays from malicious interference, excepted. All dead ends to be connected wherever practicable. When the above work is completed, the party of the first part will dismiss the action now pending between the parties hereto in the Sebastian county circuit court for the Fort Smith district of Sebastian county, Arkansas, until which time said action shall stand continued. In consideration of the performance by the parties hereto of the foregoing agreement, it is further agreed that the said city may have sufficient water without charge to fill properly constructed sewer flush tanks to flush the sewers of said city. The water to be taken from the mains of said water company at points convenient and least expensive to the city. All connections for this purpose to be made under the direction of the water company (as other connections are made) but at the expense of the city. Such flushing shall be done twice in twenty-four hours, and oftener during the prevalence of epidemics, upon the order of the board of health of said city. In addition to the above specified mains to be put in by said company on or before September 1st, next, upon which the city is not compelled to take hydrants until it shall see fit, said water company shall furnish one hundred hydrants, similar to those already in use, on mains to be laid in such streets as the city shall hereafter designate, for which the city shall pay a yearly rental of only thirty dollars per hydrant, payable as the other hydrant rentals, said hydrants to be supplied as follows: The first twenty-five by January 1, 1892; the second twenty-five by January 1, 1893; the third twenty-five by January 1, 1894; and the remainder by January 1, 1895. The city reserves the right to locate said hydrants seven hundred and twenty feet apart, and if any two be placed nearer together than seven hundred and twenty feet, others may be placed enough more than seven hundred and twenty feet apart to maintain the average distance of seven hundred and twenty feet. This agreement shall continue and be in force during the existence of the franchise and contract now existing between the parties hereto provided for by Ordinance No. 35. In witness whereunto the said city has caused this agreement to be signed by its board of public affairs and attested by its seal, and the said water company has caused it to be signed by its president and attested by the common seal of said corporation this ——— day of January, 1891, at Fort Smith, Ark."

As bearing on this controversy, two sentences of the foregoing section are important: "*In consideration of the performance by the parties hereto, of the foregoing agreement, it is further agreed that the said city may have sufficient water without charge to fill properly constructed sewer flush tanks to flush the sewers of said city*"; and "*This agreement shall continue and be in force during the existence of the franchise and contract now existing between the parties hereto provided for by ordinance No. 35.*"

On or before October 1, 1907, the city instituted a suit to enforce its option under sections 1085 and 1092, above quoted. The water company conceded the right of the city to purchase, and the only point at issue between them was the determination of the purchase price of the plant. As stated, the suit was determined in April, 1911. On December 31, 1907, after the bringing of that suit, the plaintiff sent to the defendant the following letter:

"Fort Smith, Ark.  December 31st, 1907.

"To the Honorable Mayor and City Council, of Ft. Smith, Arkansas—Gentlemen: When the present owners assumed management of the Municipal Waterworks Company, we found, among other ruinous provisions and practices under the contract, was a service to the city for public buildings, prisons, fountains, flushing tanks and public schools, which had evidently grown from small beginnings to an enormous use and wastage by the city, for which no remuneration whatever was paid to the company.

"This company has faithfully fulfilled all these services to the latest limit of time in said contract, October 1st, 1907.  As this service in times past and is now, causing this company a destructive loss, therefore, in the exercise of our undoubted right we hereby give notice with all good will and comity, that from and after January 1st, 1908, we shall be obliged to meter and to charge for said services at our minimum rate for large consumers, of ten cents for each thousand gallons.

"Yours very respectfully,   Municipal Waterworks Company,
"By Horace H. Shaw, Manager."

On receipt of that letter, or shortly thereafter, Mr. Shaw, the manager of the plaintiff, was notified by a representative of the city that it would not pay for the water referred to in plaintiff's letter.

Section 1069 of the Digest, which is part of the original ordinance, provided as follows:

"The right is hereby granted to Chas. W. Hill, of Parsons, state of Kansas, his associates and assigns, to construct, maintain and operate in the city of Ft. Smith, state of Arkansas, for the purpose of supplying the city and its citizens with water, a system of waterworks, for the term of twenty years, unless sooner terminated by said city, by purchase or otherwise as herein provided."

[1] I. In 1887, as shown in section 1092, the city, in consideration of certain additions and improvements, waived "the right of purchasing said waterworks as provided in section 9 of said ordinance 35 for the full term of 20 years," from October 1, 1887.  This waiver and extension of the right to purchase did not in terms extend the franchise.  It had already been provided in section 1087 that if, at the expiration of the franchise, the city had not become the owner of the waterworks the grantee should continue to maintain and operate the same.  The testimony shows that both parties treated the franchise as extended, and the contract as to water used by the city as still in force until December 31, 1907, the date of plaintiff's letter, above quoted.  By section 1069 the term of the franchise was fixed at 20 years from the passage of the ordinance of March 3, 1884.  By section 1085 the city had the right to purchase the water plant at the expiration of 10 years from January 1, 1885, and at the expiration of every five-year period thereafter.  The franchise period did not then coincide with the first purchase period.  By section 1092 passed February 22, 1887, the purchase period was extended 20 years from March 1, 1887.  Nothing was said about a right to purchase at any other time.  It is fair to presume that no other was contemplated.  By section 1093, passed in January, 1891, provision was made for flush tanks for sewers and additional hydrants.  Water for flush tanks was to be free.  The price of additional hydrants was fixed.  It provided that: "This agreement shall continue and be in force during the existence of the franchise and contract now existing between the parties hereto provided for in Ordinance No. 35."  The agreement referred to meant the agreement set out in section 1093;

that is, free water for flush tanks and the amount to be paid for additional hydrants. Under this section the franchise and contract were regarded as identical, or, running concurrently. By the terms of the original ordinance, the franchise expired in March, 1904. By the contract of 1887, and the contract of 1891, and the construction of the parties, evidenced by their acts, the franchise was extended to October, 1907. After March, 1904, the plaintiff continued to render bills and receive payments in the same way as before; that is, for 50 hydrants at the rate of $60 per annum, 75 hydrants at the rate of $50 per annum, and the remaining hydrants at $30 per annum, no charge being made for water used by city offices and prisons. The presumption is conclusive that the rent therefor was, as theretofore, included in the hydrant rent, as provided in section 1088. The hydrants referred to in section 1093 at $30 per annum were not the same as the hydrants referred to in section 1081 at $60 and $50 per annum. The provision in section 1087 referred to hydrants covered by section 1081, and not those covered by section 1093. According to the modifications of the contract and the interpretation of the parties, the price at which water was to be furnished to the city was to remain the same during the existence of the franchise and contract. Therefore plaintiff's contention that the contract period, in so far as it related to the price of water furnished the city, ended with the expiration of the 20-year period in October, 1907, is not correct. The period of time necessary to enforce the right to purchase must be included in the period covered by the contract which gave the right. The finding must be that the plaintiff cannot, under the contract, charge defendant any more for water during the period of the pendency of the suit than it could for the period prior thereto, because it was part of the contract period.

II. If this finding is incorrect and section 1087 stands without modification except as to the extensions of the franchise, as plaintiff contends, then after October 1, 1907, the price of water used by fire hydrants was either to be the amount agreed upon between the parties, or was to be the minimum for water actually used. The testimony of Kuper and Johnston is that after the receipt of the letter above quoted there was an agreement between them, as representatives of the city, and Mr. Shaw, as manager for the plaintiff, that water should be furnished to the city as theretofore, and payment should be made under the contract; that is, that there should be no change during the pendency of the suit. Mr. Shaw denied the conversation with Johnston. He does not deny the statement made by Kuper. It may be that Kuper and Johnston referred to the same conversation with Shaw. Kuper and Johnston are corroborated by the fact that the plaintiff continued to render bills in the same way as they had previously been rendered and for the same amounts. No effort was made to collect "at the minimum rates for water actually used." Only one other rate was contemplated by section 1087, and that was the rate to be agreed upon between the parties. There must have been some agreement between them, for bills were rendered every six months, as provided by contract and were paid by defendant. The prices were the same as had been charged previously; that is, 50 hydrants at the rate of $60 per annum, 75 hydrants at the rate of $50 per annum, and 32 hydrants at the rate

of $30 per annum. If the original contract was terminated, why should the difference in price for hydrants be maintained? Why should $60 be paid for some hydrants, $50 for others, and $30 for still others? The city ordinances provided for a certain number of hydrants at the price of $60, and certain others at $50, and still others at $30. It is a reasonable inference that after the expiration of the contract, in the absence of an agreement, there would be no difference in the price for hydrants. One would be worth as much as another. The preponderance of the testimony is to the effect that after December 31, 1907, the date of the letter to the mayor and the council, the city should have water, and pay therefor under the contract, just as it had done prior to the bringing of the suit.

Testimony was introduced by the plaintiff to the effect that bills for water furnished to flush the sewers were presented to the city. It appears from the testimony that certain bills were handed by Mr. Rosamond, local manager of the plant, in one instance to the city clerk, in another instance to the deputy city clerk. On each occasion he was told that they would not be paid. In the regular course of conducting the city's affairs these bills would have been referred to the board of public affairs. They were never so referred. No member of the board of public affairs had any knowledge of them. They were never presented to the committee of the council called the committee on claims; they were never presented to the mayor or the council. The first time that the city had notice of such claims, other than as stated in the letter of December 31, 1907, and the conversations between Shaw and the representatives of the city, was when the plaintiff filed its amended cross-bill in the suit of the city against it on March 25, 1911, about 10 or 12 days before the final decree was rendered in that case. Why these bills were rendered separately from the bills for hydrant rental, and why they were not pressed and insisted upon, and brought to the attention of the council, is not explained. The manner in which they were presented adds nothing to the testimony tending to contradict the testimony with regard to an agreement relative to what the city should pay after the receipt of the letter of December 31, 1907.

[2] III. As to water used to flush sewers it is clear that it comes under a separate provision from that governing the use of water for fire hydrants. There were no sewers in Ft. Smith at the time of the passage of the original ordinance. Flush tanks for sewers were governed by the contract of January, 1891, and set out in section 1093. If no contract was made with reference to them after December 31, 1907, and if water for their use was not provided for by the original contract and the modifications thereof, then the recovery of the value of the water furnished by the plaintiff for their use subsequent to January 1, 1908, must be based on an implied agreement, or upon the old common-law action of indebitatus assumpsit.

The testimony for the plaintiff is that in accordance with the notice given in the letter of December 31, 1907, meters were placed upon the flush tanks, and that the water charged for in its complaint is the amount estimated to have passed through those meters. As stated, plaintiff was notified that the city would not pay for the water. The plaintiff could have turned the water off. It did not do so.

"Upon a promise arising by implication of law indebitatus assumpsit lies. The request necessary to support such promise may be inferred from the beneficial nature of the consideration and the circumstances of the transaction. The law, however, will not imply a promise against the express declarations of the party to be charged, made at the time of the supposed undertaking, unless such party is under legal obligation, paramount to his will, to perform some duty." 4 Cyc. 325. 3 Standard Encyclopedia of Procedure 195.

"The law never implies a promise against the expressed will of a party sought to be charged. In Chitty on Contracts, it is said: 'The law will not imply a promise against the express declarations of the party to be charged, made at the time of the supposed undertaking.'" Meaher v. Pomeroy, 49 Ala. 146.

"As the law will not imply a promise, where there was an express promise, so the law will not imply a promise of any person against his own expressed declaration, because such declaration is repugnant to any implication of a promise." Whiting v. Sullivan, 7 Mass. 107; Earle v. Coburn, 130 Mass. 596; Boston Ice Co. v. Porter, 123 Mass. 28, 25 Am. Rep. 9; Jewett v. Somerset, 1 Me. (Greenl.) 125.

"To justify a recovery upon an implied assumpsit, it is necessary for the plaintiff to establish facts from which a promise upon the part of the defendant to pay a certain sum of money can reasonably be presumed. But no such promise can possibly be presumed where the act constituting the cause of action is done in defiance of plaintiff's rights, or under a claim of adverse rights." Carson River Lumber Co. v. Bassett, 2 Nev. 249; Ruse v. Williams, 14 Ariz. 445, 130 Pac. 887, 45 L. R. A. (N. S.) 923; Anderson v. Caldwell, 242 Mo. 201, 146 S. W. 444; Raymond v. Eldridge, 111 Mass. 390; Columbus, H. B. & T. Ry. Co. v. Gaffney, 65 Ohio St. 104, 61 N. E. 152.

It does not meet the proposition to say that plaintiff could have been compelled by the city to turn water into flush tanks. It is a sufficient answer to say that in this instance there was no compulsion. What plaintiff did, it did voluntarily. Therefore it cannot recover on an implied contract for water used in flushing sewers.

IV. Even if the testimony warranted the conclusion that plaintiff is entitled to remuneration for water furnished to the city for use in the city offices and prisons, there is no testimony by which it can be determined what amount of water was so used. It appears that the water going to the county jail and the county offices ran through the same meter as that going to the city jail and the city offices. The city and county use the same jail building. The testimony tends to show that the county paid for all the water used by that building. It would be impossible to say what was used in the city offices.

The objection of the city to the introduction of the meter book by the plaintiff will be overruled.

The complaint of the plaintiff will be dismissed, and the defendant will recover its costs.