## LANDON v. KANSAS CITY GAS CO.

## SAME v. WYANDOTTE COUNTY GAS CO.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1926.)

Nos. 6906, 6907.

**1. Gas ⊂⊃14(1)—Court's prior refusal of receiver's application for permission to shut off gas held not waiver or estoppel, available against receiver.**

Court's prior refusal of application by receiver of natural gas company for permission to shut off gas to distributers refusing to pay increased rates ordered by court *held* not waiver or estoppel, available against receiver.

**2. Contracts ⊂⊃4—"Contracts implied in law" defined.**

Implied contracts are those implied in fact and those implied in law, which latter are obligations imposed by law, without regard to assent of party bound, for purpose of remedy.

[Ed. Note.—For other definitions, see Words and Phrases, Contract Implied in Law.]

**3. Gas ⊂⊃14(1)—Customers held liable on implied contract for increased rates fixed by court.**

Where court directed receiver for natural gas company to charge increased price to distributing companies, and such companies, with notice of finality of rates fixed, refused to pay any increased prices, *held*, that receiver was entitled to recover on implied contract for gas thereafter furnished, for which he received and retained payment at former rates; rule that promise will not be implied against expressed declaration of party to be charged not being applicable, since companies could have refused to accept gas.

**4. Gas ⊂⊃14(1)—Customer dealing with receiver held bound by knowledge of law limiting powers.**

Distributing company, dealing with receiver for natural gas company, *held* bound by knowledge of law limiting powers and authority of receivers.

**5. Gas ⊂⊃14(1)—Receiver, whose previous application for permission to shut off gas to consumers refusing to pay increased rates was refused, held entitled to recover on implied contract without renewing application.**

Where previous application by receiver of natural gas company for permission to shut off gas to distributers refusing to pay increased rates ordered by court was refused, receiver was not bound thereafter to make similar application in order to hold distributers liable on implied contract.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Separate actions by John M. Landon, receiver of the Kansas Natural Gas Company, against the Kansas City Gas Company and against the Wyandotte County Gas Company. Judgments for plaintiff on part of claim, and for defendants on part (300 F. 351), and plaintiff brings error. Reversed and remanded.

Robert Stone, of Topeka, Kan. (T. S. Salathiel, of Independence, Kan., George T. McDermott, of Topeka, Kan., R. L. Webb, of Williamstown, Kan., and Beryl R. Johnson, of Topeka, Kan., on the brief), for plaintiff in error.

Charles H. Mayer, of St. Joseph, Mo., for defendants in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and WILLIAMS, District Judge.

VAN VALKENBURGH, Circuit Judge. These two cases were presented and may be considered together, because the questions involved are identical; differences existing merely as to amounts and dates. The suits are ancillary to certain equity causes pending in the District Court of the United States for the District of Kansas, in which the above-named receiver was appointed, which cases have been consolidated, and the present actions are brought for the purpose of protecting property then in the potential possession of the court and to enforce its jurisdiction. By them plaintiff in error seeks to recover certain amounts claimed to be due under an implied contract to pay for gas furnished the defendants at a price fixed by order of court in the receivership cases. The plaintiff in error was the receiver duly appointed, qualified, and in charge of the properties of the Kansas Natural Gas Company, from which the two defendants received the supply of gas which they distributed to their consumers, the one in Kansas City, Mo., and the other in Kansas City, Kan. The administration of these receivership cases was in the hands of Hon. Wilbur F. Booth, duly assigned to the district of Kansas for that purpose. The receivership began in 1916. Prior to July 14, 1919, the price fixed by the court for gas furnished by the receiver, in so far as is material to this controversy, was 28 cents per 1,000 cubic feet at the point of delivery. On that date the court issued its order raising the price to 35 cents. The receiver was directed to notify the several distributing companies of this order, with the statement that they were at liberty to make such representations to the court as they might desire. Defendants in error appeared, offered evidence, and made oral arguments, suggesting a rate of 26 cents, and advising the court that they

would not pay the rate demanded. On August 5th the court made a further order in part sustaining the order of July 14th, but in lieu thereof fixing a rate of 28 cents per 1,000 cubic feet at the city gates.

After August 5th the receiver billed all the distributing companies on the basis of the 28-cent rate. Defendants in error refused and failed to pay for gas delivered to them at that price, but made monthly payments on a former basis, which had prevailed before the issuance of the orders to which reference has been made, and which was considerably less than the rates fixed by the order of August 5, 1919, aforesaid. Thereupon the receiver applied to the court for leave to cut off the supply of gas from defendants in error unless they complied with the court's order; this application was refused. October 13, 1919, the receiver made application for an order to set aside the order of August 5th and to restore the order of July 14th, which fixed the rate at 35 cents. The entire matter was again presented in an extended hearing, at which the defendants appeared, examined witnesses, made oral arguments, and filed briefs. The court took the matter under advisement, and on January 20, 1920, issued its final order fixing the rate at 35 cents per 1,000 cubic feet at the city gates, the same to become effective on and after March 25, 1920. As reason therefor it stated, in effect, that under the existing rate, which, in part, the defendants in error had refused to pay, the business was being operated at a loss, and that, to enable the court and receiver to discharge their obligations, minister to the wants of the public, and receive a fair and reasonable return, it was necessary to charge the increased rate.

Two days before the order was to go into effect, to wit, March 23, 1920, the president of the Kansas City Gas Company wrote to the receiver, declining to pay the 35-cent rate fixed and proffering the old rate of 28 cents. It is assumed that the same attitude was taken by the Wyandotte County Gas Company. To this letter, so far as the record discloses, the receiver made no reply; but from and after the date on which the new rate became effective gas was furnished and billed to the defendants at the 35-cent rate. Defendants in error accepted the gas and remitted at the 28-cent rate. These remittances were applied by the receiver upon the price fixed by the order. The readings of the meters, by which the amount of gas furnished was determined, were made upon the 25th of each month; consequently gas from and after March 25th was not billed until a later date, approximately April 25th, for that current month, and payment was not expected nor made until the 1st of the following month, to wit, May 1st. As has been stated, the distributing companies had theretofore withheld large amounts due under former rates, including the 28-cent rate established by order of court, and had paid principally upon the basis of a division of their receipts from the ultimate consumers. Suits were then pending between the receiver and the distributing companies for the collection of such arrearages. On or about April 29, 1919, these suits were settled and dismissed, by the terms of which settlement the Kansas City Gas Company paid to the receiver the sum of $297,570.13, and the Wyandotte County Gas Company paid to the receiver the sum of $74,704.13. During the existence of the disagreement which led to the filing of the suits thus settled, payments had been made in much the same manner as above set out; the distributing companies contending that they owed only the amounts paid, and the receiver insisting upon the then existing 28-cent rate, but receiving and applying payments on account. As a part of the settlement of this prior litigation and on the said 29th day of April, 1919, the following stipulation was entered into:

"The Kansas City Gas Company and the Wyandotte County Gas Company shall forthwith file with the Public Service Commission of Missouri and the Court of Industrial Relations of Kansas, respectively, and press to early hearing, applications requesting said Public Service Commission of Missouri and the Court of Industrial Relations of Kansas, respectively, to fix rates to be charged to consumers of gas by said Kansas City Gas Company and the Wyandotte County Gas Company, respectively, said rates to be based upon such price as said gas companies shall be required by the receiver and the Kansas Natural Gas Company to pay for gas at the gates of the cities from March 25, 1920. Upon the hearing of such applications, the receiver and the Kansas Natural Gas Company agreed that they will, if called upon, produce and have available for use by the Kansas City Gas Company and the Wyandotte County Gas Company or their attorneys such witnesses and exhibits as may be necessary to show the basis for fixing the gate rate charged by the receiver and the Kansas Natural Gas Company. It is agreed however, that nothing herein contained shall obligate the receiver or the Kan-

sas Natural Gas Company to submit to the jurisdiction of said Public Service Commission of the state of Missouri or the Court of Industrial Relations of the state of Kansas, or be deemed to be a waiver of their rights to question any order of said Public Service Commission or of said Court of Industrial Relations."

It will thus be seen that both defendants in error agreed to apply to their respective public service tribunals for authority to raise their rates to consumers; the same to be based "upon such price as said gas companies shall be required by the receiver and the Kansas Natural Gas Company to pay for gas at the gates of the cities from March 25, 1920." It was especially provided that the receiver should in no wise be conceived to submit to the jurisdiction of said state tribunals. The course of business between the receiver and the two companies then proceeded as it had theretofore proceeded, when there had been contentions between them as to the rates to be charged and paid for gas furnished. Gas was furnished by the receiver and received by defendants in error. Each was supplied with physical instrumentalities whereby the gas could have been shut off by the receiver at the gates of the city, and whereby the receipt of gas could have been excluded by the distributing companies at the same points; neither had exercised this power in the past, and neither exercised it then. Under the situation theretofore prevailing, to which reference has been made, but two months before the hearing, which resulted in establishing the 35-cent rate, the receiver had made application to the court for permission to shut off the gas unless his rates were complied with; this the court refused, in the interest of the convenience, comfort, and health of the large communities served as ultimate consumers. In due course the distributing companies were permitted, by their respective public service tribunals, to raise their rates in conformity with the situation confronting them, as disclosed by the stipulation and by the application they themselves made. As stated by the trial court, this condition of affairs continued from and after March 25, 1920, until October 15, 1920, a period of some seven months. For the purposes of this opinion the precise dates are not necessary to be stated. It is sufficient that the plaintiff in error sues to recover against each company the difference between the price of gas fixed by the court and that paid by defendants in error. Ultimately, some time after the Public Service Commissions of the respective

states had permitted the distributing companies to increase their rates to consumers, the 35-cent rate was paid.

The case was tried to the court upon an agreed statement of facts, and upon the third count of the complaints, which sought recovery as upon implied contract. There were included other claims made by the plaintiff, arising out of the manner in which the gas was metered to defendant companies. These claims amounted to the sum of $22,111.88, with interest, in the case against the Kansas City Gas Company, and to the sum of $4,396.84, with interest, against the Wyandotte County Gas Company. These claims were conceded by defendants to be correct, and the trial court awarded judgment against the defendants for these amounts. In its judgment entry, however, the court omitted to allow interest thereon. With respect to the main cause of action, the court was of the opinion that, inasmuch as the defendants, through their notice to the receiver, had refused to pay the 35-cent rate, the minds of the parties had not met, and plaintiff could not recover as upon implied contract. The finding, therefore, was for defendants upon this phase of the cases, and costs were awarded in their favor. The determination of the cases, therefore, involves the consideration of this single proposition.

The District Court having charge of the receivership, in the exercise of its recognized and conceded power, after exhaustive consideration, and in the exercise of striking forbearance, all parties having been invited to appear, the invitation being accepted, and the opportunity availed of, found that, to enable the receiver to discharge his obligation and minister to the wants of the public, the charge in this zone must be 35 cents per 1,000 feet at the gates of each city, and a final order upon the receiver was entered to that effect. This requirement was made uniform by the spirit, if not the letter, of existing law throughout the zone. Both defendants in error appeared at the hearings leading up to this order, and were thoroughly conversant with its terms and with the finality of the action taken. It will be remembered that two such hearings had been held. At the first of these hearings, in the summer of 1919, the court modified its former order, reducing the rate from 35 cents, by that order established, to 28 cents. At that time the defendants refused to pay even this 28-cent rate, and all arrearages therefor were subsequently adjusted upon the dismissal of the suits to recover the same, to which reference has been

made. Experience of operation demonstrated that the receiver was operating without return and at a loss. He therefore applied to the court to reopen the matter and to restore the 35-cent rate. The court held an extended hearing, at which these defendants appeared by invitation and presented their objections to this proposed action. After very careful consideration Judge Booth decided that the increase was necessary, and made his final order of January 20, 1920, the same to become effective on the 25th day of the following March; but two days prior to this effective date the president of the Kansas City Gas Company wrote the receiver, as heretofore stated, and on April 29th, before payment upon the first monthly installment of the increased rate was due, the stipulation above quoted was entered into. It is the contention of the defendants that this notice to the receiver was a sufficient refusal on their part to pay the increased rate to relieve them from any contractual liability thereunder; that, if the receiver continued to furnish gas thereafter, he did so at his peril; and that, if he did not intend to accept the 28 cents per 1,000 tendered, he should have shut off the gas at the gates of the city and have refused to furnish unless his demands were complied with.

[1] Under the situation theretofore prevailing, but two months before the hearing which resulted in the 35-cent rate, the receiver had made application to the court for permission to shut off the gas unless his rates then established were complied with; this the court refused in the interest of the convenience, comfort, and health of the large communities served as ultimate consumers. This action, in the exercise of a wise public policy, can hardly be urged in the nature of waiver or estoppel. It was but a cumulative and highly drastic method of collection. The question of whether the rate fixed by the court was reasonable is not in this case. Upon the record, however, and upon the implied admission of the defendants in their application to the Public Service Commissions, the rate was reasonable; but incidentally it may be questioned whether an order of a court, entered in the exercise of its conceded powers, over a subject-matter exclusively within its jurisdiction, may be subjected to the question, in divers and sundry jurisdictions, of whether the exercise of its judicial discretion was sound. However, as we have said, this question does not here obtrude itself upon us. Upon final refusal to pay, these suits were instituted at the direction of Judge Booth.

We have, then, only to consider whether the plaintiff can recover upon the theory of implied contract.

[2] Implied contracts are of two classes: (1) Those implied in fact; and (2) those implied in law. The rule as to the latter is thus stated in Corpus Juris, vol. 13, p. 244, par. 10:

"Contracts implied in law, or more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractū. * * * They are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises, not from consent, as in the case of true contracts, but from the law or natural equity. So when the party to be bound is under a legal obligation to perform the duty from which his promise is inferred, the law may infer a promise even as against his intention."

By counsel for defendants in error and by the trial court chief reliance is placed upon the rule announced in Municipal Water Works Co. v. City of Ft. Smith (D. C.) 216 F. 431, which is that no promise to pay can be implied contrary to the express declaration of the party sought to be charged. This rule, where applicable, is well established. In the case cited the waterworks company was an individual contractor, conducting its business as such, without interference from paramount authority of court or otherwise. It was dealing with the city direct, as distinguished from ultimate consumers served by the city. It had the power to make such contracts, compromises, or concessions as it saw fit, and if, under such circumstances, it chose to furnish the city with city water in the face of the express declination on the part of the city to pay therefor, it did so at its own peril. The cases cited in support of this decision, and of the doctrine there announced, go no farther than this.

[3-5] No case is produced, analogous to that at bar, where a receiver is acting under the express direction of a court, speaking through a specific order. In this case the receiver was bound by that order. He had neither power nor authority to furnish gas at a rate less than that fixed by the court; of this the distributing companies had full notice, and for that purpose the proceedings at the hearings, in which the gas companies participated, were evidentiary. The distributing companies were also bound by knowledge of

the law, which places limitations upon the power and authority of receivers. Application to the court itself, if not indulged, could have had no effect; but, if any relief were to be expected, it must have proceeded from the court, and by application to the court, a procedure which had theretofore been employed, and with which the distributing companies were thoroughly familiar. They knew that this rate had been fixed as a finality, after exhaustive hearings in which they had participated. They knew, therefore, that, when the receiver furnished gas, he furnished it necessarily at the rate fixed by the court; that he had no authority to waive any of the limitations upon his authority. It is true that he might have shut off the gas, if permitted by the court so to do. He did not apply in this case for such permission, but, as has been shown, but two months before the hearing which resulted in the 35-cent rate, the court had declined to grant such permission under similar conditions, and the receiver was not bound to make further application in view of this circumstance.

We do not think such a drastic measure should have been required, in view of the nature of the service rendered; but if, as urged by the distributing companies, and suggested by the trial court, such action could in any view be expected from the receiver, it was equally incumbent upon the distributing companies, with means equally available, and with still greater force, because they were accepting a commodity tendered at a price of which they were cognizant, and from a receiver without power to depart therefrom. Under such circumstances the letter to the receiver, upon which reliance is placed, was brutum fulmen, a mere vain and empty gesture. The court in charge of the receivership had power to determine the price at which it would sell its product. The receiver tendered the gas at a fixed rate, which he had no power to modify; this the distributing companies understood. In homely phrase, they could "take it or let it alone." If they accepted the gas and its beneficial use, they did so with the implied promise raised by law to pay the only rate which they knew was or could be charged. Therefore, while the law, as declared in Municipal Waterworks Co. v. City of Ft. Smith, supra, is sound where applicable, and generally between private parties, it has no application here.

This conclusion is fortified by the stipula-tion to which reference has been made. It was therein, upon ample consideration, recognized that this rate inexorably confronted the distributing companies from March 25, 1920. In view of this, they agreed to apply at once to their Public Service Commissions for relief. This action on their part was indulged, and may well explain the action of the receiver in accepting payments on account, and in refraining from any prompt or drastic method of collection until such time as the distributing companies, by the raising of their rates to consumers, should be assured of more enlarged ability to pay. It was not essential that those rates permitted by the commissions should have been retrospective to cover the period to March 25, 1920. The stipulation, upon forecasting the application to the commissions, recognizes in terms that the distributing companies would be required to pay the rate fixed from and after the 25th day of March, 1920. It does not appear that a Public Service Commission undertakes to prescribe what rates distributing companies may pay for their supply. It seeks to regulate the rates charged by them to their consumers.

This conclusion does not involve any change of attitude or theory by plaintiff in error upon the pleadings. The suits were upon implied contract, and the theory is that the gas was furnished and accepted under conditions known to exist which raised such an implication. The situation presented was tantamount to that of a legal obligation paramount to the will of the distributing companies. With full knowledge they accepted gas from an officer of court, who was charging a rate from which he had no power to depart. Acceptance under such circumstances implies the promise to pay at that rate. The pleading aptly covers a contract implied in law. There has been no departure. It follows that the defendants should be held to pay the difference between the price of the gas furnished at the 35-cent rate and the lesser amount paid therefor, with interest thereon from the dates when the payments were due; also interest upon the sums of $22,111.88 and $4,396.84, allowed by the trial court, but not incorporated in the judgment; costs should be awarded in favor of plaintiff.

The cases are reversed and remanded for further proceedings in accordance with the views herein expressed.