CARSON RIVER LUMBERING CO., Respondent; v. A. BAS-
SETT et al., Appellants.

The general rule of law is, that that which is in its inception a tort cannot be
waived so as to support an action of assumpsit.

To enable a party to recover in assumpsit on implied promise, the plaintiff must
establish such facts that a promise on the part of the defendant might reason-
ably be presumed from the transaction. No such promise can be presumed
when the defendant commits a trespass under a claim of right.

There are some cases in which the plaintiff may waive the trespass, and sue in
assumpsit. One, when the trespasser sells the personal property of plaintiff
and receives the money. Another, when the trespasser dies, and suit is
brought against his personal representative.

Although all forms of pleading are abolished, yet a party must prove the case he
makes in his pleadings, or fail. A party who alleges a contract, and seeks to
recover under that contract, cannot recover on proof of a trespass.

The fact that there was evidence tending to sustain the complaint of plaintiff,
will not sustain the judgment under the instructions in this case, which assumed
that plaintiff might recover on proving that which would amount to a tres-
pass, whilst the action was exclusively on contract.

The Act of the Territorial Legislature granting exclusive privileges to plaint-
iff's assignors was a valid constitutional Act. The grantees under that Act
complied with the conditions precedent.

APPEAL from a judgment of the District Court of the First Judi-
cial District, Storey County, Hon. RICHARD RISING presiding.

The facts are stated in the Opinion.

J. Cradlebaugh and B. C. Whitman, for Appellants.

Cradlebaugh urged the point, that the Territorial Legislature had
no authority to grant the exclusive use of the Carson River to the
assignors of the plaintiff.

Whitman argued that a corporation can only exercise such pow-
ers as are expressly conferred. Here there was no power to collect
tolls. The powers of corporations are to be construed strictly.

A franchise is not the subject of sale.

The facts as proved in this case will not support assumpsit.
(Mayor of Northampton v. Ward, 1 Wils. 109 ; Saunders' Pleading,
vol. 1, p. 111; Birch v. Wright, 1 Term. R. 378–387.)

The same rule in this respect holds good under the code as at

17

common law. (*Miller* v. *Van Tassel*, 24 Cal. 463; *Lubert* v. *Chauviteau*, 3 Cal. 462.)

As to implied promise, see *Cripps* v. *Blank*, 9 Dowling & Ryland, 480.

*Rhodes & Kirkpatrick,* for Respondents.

There were two counts: one, an express contract; the other, an implied assumpsit. If the proof supports either, the verdict must stand.

The owner of a franchise may waive the tort, and sue in assumpsit in a case of this kind. (*Mayor of Newport* v. *Saunders*, 3 Barn. and Adol. 411.) This case overrules the case of *Mayor of Northampton* v. *Ward.*

Opinion by LEWIS, C. J., BEATTY, J., concurring.

On the twenty-eighth day of November, A.D. 1861, the Legislature of the Territory of Nevada passed an Act entitled "An Act for the improvement of the east branch of Carson River," by which C. H. Hobbs, J. C. Russell, David Smith, and J. L. Rennall were authorized and empowered so to improve the east branch of the Carson River from where it crosses the boundary line between California and Nevada Territory to the junction of the same with its west branch, and thence the main channel to the town of Empire City in Ormsby County, by removing logs, rocks, opening sloughs, and cleaning out other natural obstructions from it so as to make it suitable for the purpose of rafting down logs and timber to the town of Empire City. The second section of the act declares that "the said C. H. Hobbs, J. C. Russell, David Smith, and J. L. Rennell, or their assigns, on compliance with the provisions of the first section of this act, shall have the exclusive right to the use of said river, within the points named in said first section, for the purpose of floating down logs and timber of all kinds for the period of five years, commencing on the first day of March, A.D. 1862; at the expiration of which time said river, together with all improvements made for the navigation thereof, shall be free for and open to the people of Nevada Territory." The sixth section makes it the duty of the franchisees to construct such chutes and aprons over all dams which were erected at the time of the passage of the act

as would entirely secure them from injury, and also to construct proper booms at or near Empire City across the river, to prevent any logs or timber from floating down the stream below that point. A. W. Pray, James Wheeler, and John H. Atchison were by the seventh section appointed a Board of Commissioners to examine the chutes, booms, and aprons constructed by the franchisees, and when the Board, or any two of them, should certify " the river to be safe to float and raft logs and timber, without damage to the dams below thereon," it should be lawful for the parties named to use the stream as in the act provided ; *provided*, it should not be lawful for said parties to exercise any of the rights or franchise granted by the act until they obtained the certificate from the Board of Commissioners.

In the month of May, 1863, two of the Commissioners, A. W. Pray and John H. Atchison, made the following report, in accordance with the requirements of the Legislature :   " We, the undersigned, appointed a Board of Commissioners by Section seven of an act entitled 'An Act for the improvement of the east branch of Carson River,' approved November 28th, 1861, respectfully report that we have examined the chutes, booms, and aprons in said river, in pursuance of the duties prescribed and imposed upon us by said act, and we do hereby certify and declare said chutes, booms, and aprons in said river to be safe to float and raft logs and timbers without damage to the dams below thereon, unless the said river should rise to an extraordinary height and overflow its banks."

On the twenty-fourth of February, A.D. 1863, the franchisees formed a corporation, and adopted the name " Carson River Lumbering Company."

After the plaintiff had improved the river by the construction of chutes, aprons, and booms, and the removal of obstructions from the channel, the defendants who had organized an association styled the " Carson River Wood Company," placed in and floated down the stream, at different times, about eight thousand nine hundred cords of wood, and used the plaintiff's improvements, as it is claimed, in so doing.   Upon these facts, the plaintiff brings an action of assumpsit to recover the sum of eight thousand nine hundred dollars, which, he alleges, is a reasonable compensation for the use of the river and the improvements placed thereon by it, and that the

defendants promised and undertook to pay that sum to it.   The
defendants, in their answer, deny all the material allegations of
the complaint.   Upon the trial, it was proven that the defendants
did use the river as alleged by the plaintiff; but whether the de-
fendants ever promised to pay for the privilege of doing so, or not,
is a question not by any means settled by the testimony.

The weight of evidence is decidedly against the plaintiff upon
that point.

That is, however, a question not necessary to be determined on
this appeal, as the judgment must be reversed upon an error com-
mitted by the Court in refusing to give certain instructions asked by
the defendants, and in giving others at the request of plaintiff.
Counsel for plaintiff and the Court below seem to have acted upon
the assumption that it was unnecessary for plaintiff to establish a
promise or undertaking by the defendant, but that the law would
raise an implied promise from the use of the river and improve-
ments by the defendants.   The jury were therefore instructed that
" if they believed that no special agreement existed between the
plaintiff and defendant to pay the plaintiff for the use of the fran-
chise and improvements, but believed that the defendants made use
of the same in the years 1864 or 1865, or both, then they should
find for the plaintiff in such sum for each year as, in their estima-
tion from the evidence before them, would be a fair compensation
for the use thereof;" and the Court refused to give the following
instructions asked by the defendants : " No right to charge for the
use of the river or improvements is expressly granted by the Acts
of the Legislature put in evidence by the plaintiff; no such right
can be implied, and no implied contract can be raised from such
use; therefore, in this form of action, the plaintiff cannot re-
cover."

We are clearly of opinion that the Judge below erred in charging
the jury as stated above, and in refusing to give the foregoing in-
struction at the request of the defendants.   It is quite evident
that if the defendants used the river and plaintiff's improvements
without its permission or assent, it committed a trespass; and if
the plaintiff cannot waive such trespass, and sustain an action of
assumpsit for the use of the river and improvements, it cannot re-
cover in this form of action.   It is assumed, in the instruction given

by the Court to the jury on behalf of plaintiff, that the law would raise an implied promise from the use of the river and the plaintiff's improvements.

The old rule was, that what was a tort in its inception could not by any subsequent transaction be made the foundation of an implied assumpsit. And though this rule has in some peculiar classes of cases been relaxed, it is still the general rule. In most actions of trespass nothing could be more repugnant to the real facts than an implication of a promise on the part of the tortfeasor ; and it would often be in direct conflict with his express declarations. None will claim that the law would raise an implied promise to pay rent by one who takes possession of and holds lands or tenements by force and under a claim of right in himself, nor that the law will raise an implied promise to pay a certain sum of money as damages for an assault and battery. To justify a recovery upon an implied assumpsit, it is necessary for the plaintiff to establish facts from which a promise upon the part of the defendant to pay a certain sum of money can reasonably be presumed. But no such promise can possibly be presumed where the act constituting the cause of action is done in defiance of plaintiff's rights, or under a claim of adverse right.

This question has, however, been fully settled by the Courts, and is no longer *res integra*. It has been frequently held that an action of assumpsit founded upon a tort, can only be maintained in cases where personal property is unlawfully taken and sold by the tortfeasor. In such case the owner of the property may waive the tort, affirm the sale, and have an action for money had and received for the proceeds. There is also another class of cases where assumpsit will lie to recover damages growing out of a tort, and that is where the action is brought against the executor or administrator of the wrongdoer. The Courts have allowed assumpsit in this latter class of cases simply because trespass will not lie, the tort being extinguished with the death of the wrongdoer. If assumpsit were not maintainable, there would be a failure of justice. These two classes of cases are, however, the only exceptions which we have been able to find to the general rule. In the case of *Jones* v. *Hoar*, 5 Pickering, 285, the Court say: " The plaintiff declares in assumpsit, and one count is for goods sold and delivered.

By the agreement it appears that the only ground for supporting this count is that the defendant cut and took away certain trees from land claimed by the plaintiff, and for the purpose of the argument, actually owned by him. The proper action would undoubtedly be trespass for the injury to the land, or trover for the trees. But the plaintiff contends that he has a right to waive the tort, and charge the defendant with the trees as sold to him. Upon examination of the authorities cited, which are well summed up and commented upon by Strong, J., in the opinion of the Court of Common Pleas, we are satisfied that the plaintiff cannot maintain this position. There is no contract, express or implied, between the parties, and therefore an action *ex contractu* will not lie. The whole extent of the doctrine, as gathered from the books, seems to be that one whose goods have been taken from him or detained unlawfully, whereby he has a right to an action of trespass or trover, may, if the wrongdoer *sell the goods and receive the money,* waive the tort, affirm the sale, and have an action for money had and received for the proceeds. No case can be shown where assumpsit, as for goods sold, lay in such case, except it be against the executor of the wrongdoer, the tort being extinguished by the death; and no other remedy but assumpsit against the executor remaining." So in the case of *Bennett* v. *Francis,* (2 Basanquet & Puller, 550) Lord Alvanly, C. J., after saying that he did not intend to give a positive opinion upon the question, used the following emphatic language :

" But thus far, I will say, that it does appear to me monstrous to carry the causes to any such extent as that which has been contended for, and that they do not warrant the conclusion which has been drawn from them.    *    *    *    I do not find that the Judges in any of the cases have gone so far as to hold that a tort may be converted into a contract.    *    *    *    All that is to be collected from the cases is this, that if the goods be converted into money, the Court will allow the plaintiff to waive the tort, and bring an action in which he can recover nothing more than the sum actually received."

These authorities are directly opposed to the instructions given to the jury at the request of the plaintiff, for if the tort cannot be waived and assumpsit maintained, there is no implied promise

arising out of the wrong.   We can see very readily how tolls might be recovered from a trespasser in an action of assumpsit.   The law gives the right to collect them, and if the plaintiff shows that right, and that defendant had become liable to pay such toll by doing the act for which toll is authorized to be collected, the law would at once raise an implied contract or promise to pay the customary toll, and the defendant would *not* be allowed to plead his own trespass to avoid the recovery.   Upon the same principle, perhaps, stallage might be recovered.   In these cases the trespass would not appear at all.   But in a case like this, to show that defendants made use of the river and plaintiff's improvements without the permission of the plaintiff, is showing a trespass out of which no implied promise could well arise.   But, say counsel for plaintiff, all forms of action are abolished by our statute, and as there is in this case a clear right, the Court should not refuse a remedy.   To this it is simply necessary to say, that it does not necessarily follow that because the plaintiff has a right, the Courts should always give a remedy, whether he uses the proper means of obtaining it or not.   To entitle him to recover it is necessary, not only that there be a good cause of action, but the plaintiff must seek his remedy before the proper tribunal and under proper pleadings.   It will hardly be claimed that because the forms of action have been abolished, a party must have his relief whenever he asks it, whether his pleadings be in accordance with the facts out of which the action arises or not. Counsel would hardly expect to recover on a promissory note in an action in which the complainant charges a trespass upon land or *de bonis asportatis*, nor to recover damages against a defendant for trespass in an action in which he is sued for rent upon a lease.   If in such a case there is a failure to show a lease, there could be no recovery in that action, because there would be a failure to establish the fact upon which the action is founded.   As in this case the plaintiff declares upon a contract, if he fails to establish it there must be an end of the action.   If under such a complaint he can recover damages in trespass for infringing the plaintiff's franchise, there can be no good reason why he should not also be permitted to recover upon a promissory note under the same pleading.

We do not think such indulgence can possibly be extended to litigants under any system of practice.

Carson River Lumbering Co. *v.* Bassett *et al.*

The fact that there was evidence introduced tending to sustain all the counts in the complaint, and the jury having found a general verdict, do not, it seems to us, help the plaintiff's case upon this appeal. The Court in effect charged the jury that the use of the river and improvements would raise an implied promise to pay what such use was reasonably worth. This was not correct, and the presumption is that it misled the jury, and is therefore sufficient to reverse the judgment.

Though we consider it entirely unnecessary to discuss at length the question of the validity of the Act of the Legislature granting the franchise to the plaintiff, and the question of whether the condition upon which it was granted was complied with, yet it may be well to say in brief, that we are clearly of opinion that the legislative Act is valid, and that the condition was fully performed.

The judgment below must be reversed, and it is so ordered.

---

RESPONSE TO PETITION FOR RE-HEARING.

Opinion by LEWIS, C. J., BEATTY, J., concurring.

Every point made in the petition for re-hearing in this case was thoroughly considered in our first opinion, and no authorities are cited which in any way conflict with the conclusions of the Court in that opinion ; and as we are fully satisfied that the law is correctly enunciated therein, we do not feel disposed to grant a re-hearing of the argument. The general rule of law unquestionably is, that what is once a tort cannot by any subsequent transaction be made the foundation of an implied assumpsit. There are exceptions to this rule, some of which we referred to in the original opinion, but this case does not come within any of the exceptions.

There is no doubt but the plaintiff has a right to a retrial of the issue upon the pleadings as they stand. The judgment was reversed upon an erroneous instruction given by the Court below, and we can see no reason why plaintiff should not go to trial on its present complaint, if counsel are satisfied that a contract or promise on the part of the defendants can be proven. The former judgment of this Court must stand, and a new trial is awarded.