BOARD OF COM'RS OF SEMINOLE
COUNTY v. SOUTHWEST
NATURAL GAS CO.

No. 30752.   June 8, 1943.

138 P. 2d 525.

Bill Biggers, County Atty., of Wewoka, and J. Henry Weston, Asst. County Atty., of Seminole, for plaintiff in error.

Kerr, Lambert & Conn, of Ada, for defendant in error.

PER CURIAM. This action was instituted originally by Seminole Gas Company and thereafter maintained by the defendant in error, hereinafter referred to as plaintiff, against the plaintiff in error, hereinafter referred to as defendant, to recover on an implied contract for a proportion of gas which had been furnished to the municipal building of the city of Seminole during the years 1936, 1937, 1938, and 1939, and in which building the defendant housed the superior court, court clerk, and assistant county attorney and a member of the board of county commissioners. The defendant denied that it had either expressly or impliedly contracted for the gas furnished said building or any portion thereof or that it had agreed to pay therefor, and alleged that on the contrary it had from the inception of any claim by the plaintiff and its predecessor denied liability contractual or otherwise and had refused and disallowed all claims that had been filed with it, with the exception of claims for three months in 1938 which, through inadvertence and mistake, had been paid in the aggregate sum of $50.40.

The cause was tried to a jury. The evidence adduced at the trial disclosed definitely that defendant had never contracted for any gas furnished to the building or to the offices of defendant therein, and that commencing with the first claim filed defendant had expressly disclaimed any and all liability, contractual or otherwise, for any part of the gas being furnished to said building, and that defendant had continued to thereafter reject each and every claim which had been filed against it except for the claims for three months in 1938, which aggregated the sum of $50.40 and which had been paid through inadvertence or mistake. The record shows that defendant had an appropriation for purchase of fuel and that it had an unexpended and unencumbered balance on hand out of which said claims and each of them could have been paid at the time they were filed with the defendant and disallowed by it. The record further shows that the constitutional debt limit had not been exceeded in any

manner by the claims filed and that the price which had been charged for the gas was that fixed by the Corporation Commission and that the amounts of the claims which had been filed with the defendant were within the estimates and appropriations made for the fiscal years in which they were filed, and that the gas so furnished was necessary to the maintenance and operation of the county offices in the building in which they were located; and, further, that the aggregate amount of the claims filed after allowing credit for the $50.40 which had been paid in 1938 amounted to the sum of $536.85, and for which amount plaintiff was seeking judgment. Motion of the defendant for directed verdict in its favor at the close of all of the evidence was overruled. The jury returned a verdict in favor of plaintiff and assessed its recovery at the sum of $252.73.

The defendant has perfected this appeal and as grounds for reversal, among other propositions, urges that the defendant could maintain its offices in the municipal building of the city of Seminole and use the gas furnished to said building without assuming any liability to the plaintiff for any part of the gas so furnished.

Our attention is called to Board of County Commissioners of Tulsa County v. Oklahoma Natural Gas Co., 182 Okla. 527, 78 P. 2d 800; Oklahoma Natural Gas Corp. v. City of Enid, 179 Okla. 283, 65 P. 2d 440. An examination of the cases cited will reveal that they are authority for the rule that where an appropriation has been made for the purpose of furnishing fuel and fuel has been furnished to a municipality without a specific contract and claims are filed therefor and allowed that they become valid obligations to the extent of the unexpended funds on hand for that purpose; but they do not have any application to a situation where the service for which claim is made has not been rendered at the instance or request of the municipality and where denial of liability contractual or otherwise has been communicated to the parties furnishing such service at the inception of any claim of liability against the municipality.

Before recovery could be had, plaintiff had the burden of first establishing either an implied or express contractual liability.

Under the record here submitted it definitely appears that the defendant never assumed any obligation to pay for any portion of the gas which plaintiff or its predecessor was supplying to the municipal building, and at the first opportunity defendant so advised the plaintiff and its predecessor in interest and consistently thereafter rejected any and all claims which sought to impose liability on the defendant in any manner except for claims for three months in 1938 which had been paid through inadvertence or mistake in the sum of $50.40. Assuming, without deciding, that there is no statutory inhibition against an implied contract in this case, we find no evidence to support the finding or conclusion that one did exist in fact.

Plaintiff was bound under express contract with the city of Seminole to furnish gas to the municipal building without charge. The county at all times took the position that it was dealing exclusively with the city in the matter of housing its superior court, including the normal use of its heating facilities, and this record does not indicate any contrary intention on the part of the city. Under the circumstances here, when the county refused to recognize any liability to plaintiff, the plaintiff should have taken such action as the circumstances required to clarify the matter. If its contract with the city did not require it to furnish the gas here involved, it should then have pursued its proper remedy. It could not continue to voluntarily furnish gas with the expectation of collecting from the county when the county was at all times openly and actively refusing to assume liability for same, and then claim an implied contract with the county.

A statement on implied contracts in

many respects applicable here is found in 17 C.J.S. page 318, as follows:

". . . A 'contract implied in fact,' which term has been subjected to criticism, or an implied contract in the proper sense, arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a natural intent to contract. It has been said that such a contract must contain all the elements of an express contract, it rests on consent, it is to every intent and purpose an agreement between the parties, and it cannot be found to exist unless a contract status is shown. Such a contract does not arise out of an implied legal duty or obligation but out of facts from which consent may be inferred.

"The implication, of course, must be a reasonable deduction from all the circumstances and relations of the parties, such as was within the contemplation of the parties when making the contract, or else necessary to carry their intention into effect, although it need not be evidenced by any precise words, and may result from random statements and uncertain language.

"A contract will not be implied . . . against the express declaration of the person to be charged, . . ."

An examination of the authorities cited in support of the last quoted portion of the text discloses that they are fully in point. We give them here as follows: Consolidated Products Co. v. Blue Valley Creamery Co. (C.C.A. Mo.) 97 F. 2d 23-28; Lueddecke v. Chevrolet Motor Co. (C.C.A. Mo.) 70 F. 2d 345-348; Municipal Waterworks Co. v. City of Ft. Smith (D.C. Ark.) 216 F. 431, 438; American Mut. Liability Ins. Co. v. McDiarmid, 211 Ala. 127; 99 So. 849, 850; New York Cent. R. Co. v. Sturtevant & Haley Beef & Supply Co., 236 Mass. 16, 127 N. E. 509, 512.

The Ft. Smith Case, supra, is of special interest here. The court therein quotes the following:

" 'Upon a promise arising by implication of law indebitatus assumpsit lies. The request necessary to support such promise may be inferred from the beneficial nature of the consideration and the circumstances of the transaction. The law, however, will not imply a promise against the express declarations of the party to be charged, made at the time of the supposed undertaking, unless such party is under legal obligation, paramount to his will, to perform some duty.' 4 Cyc. 325, 3 Standard Encyclopedia of Procedure, 195.

" 'The law never implies a promise against the expressed will of a party sought to be charged. In Chitty on Contracts, it said: "The law will not imply a promise against the express declaration of the party to be charged, made at the time of the supposed undertaking." ' Meaher v. Pomeroy, 49 Ala. 146.

" 'As the law will not imply a promise, where there was an express promise, so the law will not imply a promise of any person against his own expressed declaration, because such declaration is repugnant to any implication of a promise.' Whiting v. Sullivan, 7 Mass. 107; Earle v. Coburn, 130 Mass. 596; Boston Ice Co. v. Potter, 123 Mass. 28, 25 Am. Rep. 9; Jewett v. Somerset, 1 Me. (Greenl.) 125.

" 'To justify a recovery upon an implied assumpsit, it is necessary for the plaintiff to establish facts from which a promise upon the part of the defendant to pay a certain sum of money can reasonably be presumed. But no such promise can possibly be presumed where the act constituting the cause of action is done in defiance of plaintiff's rights, or under a claim of adverse rights.' Carson River Lumber Co. v. Bassett, 2 Nev. 249; Ruse v. Williams, 14 Ariz. 445, 130 P. 887, 45 L.R.A. (N.S.) 923; Anderson v. Caldwell, 242 Mo. 201, 146 S. W. 444; Raymond v. Eldridge, 111 Mass. 390; Columbus, H. B. & T. Ry. Co. v. Gaffney, 65 Ohio St. 104, 61 N.E. 152."

And therein the court used the following language:

"It does not meet the proposition to say that plaintiff could have been compelled by the city to turn water into flush tanks. It is a sufficient answer to say that in this instance there was no compulsion. What plaintiff did, it did voluntarily. Therefore, it cannot recover on an implied contract for water used in flushing sewers."

Although that case was one between parties contracting originally, the quoted excerpts apply with equal or more force herein.

The cases recognize the rules as related to quasi-contractual relations and the recovery in proper cases upon a quantum meruit basis. They are not applicable here because we know of no law which required plaintiff to furnish gas to the county or which required the county to purchase same from plaintiff.

The fact that the county avowedly confined its contract relations with the city and may not have used the gas upon any other basis will not permit recovery upon a quantum meruit basis.

The judgment is reversed and the cause is remanded, with instructions to render judgment denying any recovery to plaintiff.

CORN, C. J., GIBSON, V. C. J., and OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY, J., absent.