**WOODRUFF v. NEW STATE ICE CO.**

No. 4399.

United States Court of Appeals,
Tenth Circuit.

May 14, 1952.

Rehearing Denied June 2, 1952.

John B. Ogden, Oklahoma City, Okl., for appellant.

Richard W. Fowler, Oklahoma City, Okl. (D. A. Richardson, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Steve Woodruff brought this action in the District Court of Oklahoma County, Oklahoma, to recover royalties for the use of a device perfected by him while in the employ of the defendant, New State Ice Company. The basis of the suit is an oral contract, express or implied. Diversity of citizenship and the requisite amount in controversy being present, the case was, upon motion of the defendant, removed to the United States District Court. At the conclusion of plaintiff's evidence the court, upon motion of the defendant, dismissed the action on the grounds that plaintiff had failed to show any agreement, either express or implied, on the part of the defendant to pay the plaintiff for the use of his device. This appeal is from the order of the court finally dismissing the action.

The New State Ice Company was the licensee and agent of the Pangburn Company of Fort Worth, Texas, for the manufacture and distribution of an ice cream product known as a "Drumstick." The Vogt freezer, used for the manufacture of this ice cream novelty, was not entirely satisfactory. The appellant, who was employed to operate the freezer, of his own volition and on his own time, undertook to, and did, perfect a device which when attached to the freezer, distributed the ice cream into the cones more evenly, caused less breakage and saved considerable expense.

When appellant's improvement was called to the attention of Bounds, the plant superintendent, and Voelkers, then sales manager and now general manager of the appellee, they were both very enthusiastic over it. Voelkers "patted" appellant on the back stating "that's the best thing I have seen yet. Boy, we will pay you royalty on that. We will get Parker [a representative of the Pangburn Company] down here and get it worked through him too. * * * Your troubles are over."

At frequent intervals thereafter, appellant would inquire of Voelkers as to what progress had been made toward getting his device on the market, and Voelkers would tell him not to worry, he was taking care of it. In October 1938, about two years after

the device had been perfected, Voelkers handed appellant a copy of a letter he had written Parker, wherein he had praised the device and asked Parker to do whatever was necessary to let "the inventor derive full benefits." Sometime thereafter Parker visited appellee's plant in Oklahoma City and observed appellant's device in operation. Voelkers had a tinsmith duplicate the device and it was sent to the Pangburn Company in Ft. Worth. Thereafter Voelkers gave appellant a letter from the Pangburn Company to the effect that the device, upon arrival, had been sent to Parker in New York, and Voelkers would be advised after Parker had "experimented" with it. A check for $10.00 was enclosed for the appellant. Nothing more was done by Voelkers or the Pangburn Company, and this suit was filed in 1950.

■ Under Oklahoma statutory law, contracts are either express or implied. "An express contract is one, the terms of which are stated in words"; and "an implied contract is one, the existence and terms of which are manifested by conduct." 15 O.S.A. §§ 131, 132 and 133. The constituent elements of an express and an implied contract are the same—neither can be found unless a contract status is shown. The only difference is one of proof. The expressed contract must be shown by precise words, while the implied contract may be presumed from the acts of the parties, or from circumstances which "according to the ordinary course of dealing, and the common understanding of men, show a natural intent to contract." Board of County Commissioners v. Southwest Natural Gas Co., 192 Okl. 594, 138 P.2d 525, 527; Williston on Contracts, Revised Edition, Vol. 1, Section 3.

■ We think appellant's proof fails in "precise words" to show a promise on the part of the appellee to pay for the use of his device. We think the proof also fails to show a course of conduct from which it can be inferred or implied that the appellee intended to obligate itself to pay for the use of appellant's device. It is manifestly plain that the idea of receiving royalties first occurred to appellant when Voelkers stated "Boy, we will pay you royalty on that." But, when this statement is considered in its context, it is apparent that neither Voelkers nor appellant was looking to appellee for the payment therefor, but to the Pangburn Company who was the licensor of the basic equipment, and who was therefore in a position to create a market for the device.

■ The appellant contends, however, that even though the appellee did not expressly or impliedly promise to pay for the beneficial use of the device, it is nevertheless liable under a quasi or constructive contract, imposed by law in these circumstances. It is true that where services performed by one person are knowingly and voluntarily accepted by another, the law will presume that such services were given and received in the expectation of being paid therefor, and will imply a promise to pay for their reasonable worth. "The obligation arises, not from consent, as in the case of contracts, but from the law of natural equity." First National Bank v. Matlock, 99 Okl. 150, 226 P. 328, 331, 36 A.L.R. 1088; Williston on Contracts, Revised Edition, Vol. 1, Sec. 3. But, where a party voluntarily does an act or renders a service, and there was no intention at the time that he should charge therefor, or an understanding, express or implied, that the other should pay, he will not be permitted to recover, for the law does not convert an intended gratuity into a legal obligation. See Ward v. Archer, 173 Okl. 465, 52 P.2d 758; Board of County Commissioners of Seminole County v. Southwest Natural Gas Co., 192 Okl. 594, 138 P.2d 525; Annotation, 54 A.L.R. 548. Cf. Matarese v. Moore-McCormack Lines, 2 Cir., 158 F.2d 631, 170 A.L.R. 440.

■ Here the appellant voluntarily undertook to perfect a device for the Vogt freezer. There is no evidence that the device was perfected or put in use in anticipation of compensation therefor, nor is there any evidence that the appellee acquiesced in, or accepted, its installation in the plant, with any knowledge or understanding that appellant was to receive compensation for its use.

Since there is no express or implied promise to pay, nor a legal duty implying a promise to pay, there can be no legal basis for recovery, and the judgment is affirmed.